**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacqueline Ford, an individual, | No. CV-08-1977-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County Superior Court Department of Adult Probation, a division of the Supreme Court of the State of Arizona, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. # 40). Although not docketed as motions, both parties have also submitted motions to strike (Dkt. ## 45, 47). For the following reasons, the Court grants the motion for summary judgment, grants-in-part and denies-in-part Plaintiff's motion to strike, and grants Defendant's motion to strike.

**BACKGROUND**

In June 2005, Plaintiff Jacqueline Ford ("Plaintiff") was hired as an adult probation officer by the Maricopa County Superior Court Department of Adult Probation. On July 19, 2005, Plaintiff requested a temporary waiver from taking a mandatory defensive tactics training course because she was unable to participate due to her high risk pregnancy. Barbara Broderick ("Broderick"), who was the chief adult probation officer, received and

granted Plaintiff's waiver request.

One year later, on July 26, 2006, when Plaintiff was sixteen weeks pregnant, she was involved in a motor vehicle accident. On August 23, 2006, Plaintiff requested leave under the Family and Medical Leave Act of 1993. Dr. Thomas Cerato, who was Plaintiff's primary care physician, completed the request form and stated that Plaintiff was unable to work due to several health problems arising out of the accident and her pregnancy. The Judicial Branch Human Resources Department granted Plaintiff leave through October 18, 2006.

The next day, Plaintiff requested an extension of leave until she was medically cleared to work. Plaintiff provided supporting documentation from Dr. Laughead because Dr. Cerato had ceased being Plaintiff's primary care physician. Dr. Laughead stated that Plaintiff required disability leave until six weeks postpartum due to preterm labor. Broderick granted Plaintiff an extension for leave until January 26, 2007 and informed her that, if she was unable to return to work at that time, she needed to provide medical documentation along with an additional written request for leave.

Plaintiff gave birth to her daughter in January 2007. On January 24, 2007, Plaintiff requested additional leave through February 27 to give her time to attend her check-up, which was scheduled for late February. Broderick again granted Plaintiff's request for leave through February 27, instructing Plaintiff that, if she was unable to return to work at that time, she would need to submit an additional request for leave along with supporting documentation.

On February 22, 2007, Plaintiff attended an examination at Physiotherapy Associates, which was to report to Plaintiff's physician so that Plaintiff could be cleared to return to work. Plaintiff, however, was unable to complete the examination because her daughter unexpectedly developed health problems. On February 23, 2007, Plaintiff requested additional leave because of her daughter's health and because she had to reschedule the appointment with Physiotherapy Associates before her doctor would clear her to work. Plaintiff included documentation from Physiotherapy Associates confirming the reason that the examination was cancelled, although this documentation did not provide any date upon

which Plaintiff likely would be healthy enough to return to work.

On May 5, 2007, Broderick issued a letter acknowledging receipt of Plaintiff's February 23 request and separating Ford from her position due to her medical inability to perform her position. The letter cited a regulation, Section 16(D) of the Judicial Merit System Resolution, which allows separation from employment without prejudice if the employee demonstrates an inability to work because of medical reasons. The letter also explained that Ford's request for an extension was denied because she did not submit appropriate medical documentation indicating either the need for an extension or an anticipated return date. Broderick then informed Plaintiff that she could, in writing, request a review of the decision within ten days and could seek reinstatement for one year.

Plaintiff asserts that she immediately called (but did not write to) Human Resources and was informed that she could be reinstated quickly if she made an appointment with Broderick. Plaintiff's request for an appointment with Broderick, however, was denied. On March 12, 2007, Plaintiff informed Broderick of these circumstances and stated that she was medically cleared to return to work. Shortly thereafter, Plaintiff provided a note from Dr. Laughead, who released Plaintiff to work without restrictions, and a note from Dr. Cerato, who released Plaintiff with several restrictions. Dr. Cerato's restrictions prevented Plaintiff from performing field work and wearing a sidearm, as well as engaging in behavior that risked bodily harm.

On March 19, 2007, Broderick acknowledged receipt of Plaintiff's letter and physicians notes. Based on the restrictions Dr. Cerato prescribed, Broderick determined that Plaintiff had not demonstrated a medical ability to do fieldwork as required for her former position. Broderick further explained that Dr. Cerato's opinion, which included significant restrictions affecting Plaintiff's ability to perform the job functions, contradicted the opinion of Dr. Laughead. Broderick accordingly denied Plaintiff's request for reinstatement. On March 23, 2007, Plaintiff submitted a request for review of her dismissal to Phillip Hanley, but her request was denied because Plaintiff filed the request more than ten days after her dismissal.

1    Plaintiff again requested reinstatement on April 9, 2007, including an updated letter
2 from Dr. Cerato that again released Plaintiff to work—this time without any restrictions. The
3 parties dispute whether Plaintiff received a response from Broderick, although Defendant
4 contends that Broderick rejected Plaintiff's request because Dr. Cerato's second note was
5 inconsistent with his first note.

6    Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity
7 Commission, alleging sex discrimination based on Title VII of the Civil Rights Act of 1964
8 ("Title VII"). The instant action ensued.

## DISCUSSION

### I.    Motions to Strike

#### A.    Plaintiff's Motion to Strike

Plaintiff moves to strike the entire motion for summary judgment or, in the alternative, designated portions of the record. Plaintiff contends that several pieces of evidence were not disclosed under Federal Rule of Civil Procedure 26(a) within the deadlines imposed by the Court's Case Management Order (Dkt. # 16) and that this evidence is inadmissible under Rule 37(b)(2)(A).[1] The Case Management Order set January 8, 2010 as the deadline for the completion of fact discovery, (Dkt. # 16), but Plaintiff contends the Motion for Summary Judgment includes facts not disclosed before that date.

Plaintiff first argues that Defendant had an obligation to disclose Broderick's declaration before moving for summary judgment. A party, however, has no obligation to provide declarations used in support of a summary judgment motion other than to file it along with the motion. *SEC v. Poirier*, 140 F. Supp.2d 1033, 1041–42 (D. Ariz. 2001). Defendant, therefore, correctly filed Broderick's declaration as an exhibit to its separate statement of facts.

Plaintiff also avers that Broderick's declaration exceeds the scope of properly-

---

[1] Plaintiff seeks only Rule 37(b) relief. To the extent Plaintiff's argument has merit, however, it appears that Rule 37(c) would also prevent Defendant from using information that was not properly disclosed under Rule 26(a). Fed. R. Civ. P. 37(c).

- 4 -

disclosed information. For example, Plaintiff contends she had no notice that Broderick was the "appointing authority" with the ability to grant waivers, determine separation from employment, and evaluate reinstatements. Broderick's deposition, however, includes multiple references to this authority. (Dkt. # 48, Ex. B.) Plaintiff likewise argues that Broderick's declaration improperly explains for the first time the "field work" duties that someone in Plaintiff's position would have to perform. Contrary to this assertion, however, not only did Broderick's deposition explain that field work was a job requirement, but also Defendant disclosed that Broderick was the head of adult probation, a position that is likely to have information about the relevant job requirements. (Dkt. # 48, Ex. A, B.)

Plaintiff also contends that Defendant failed to disclose information about Broderick's employment policies and about nine other employees who were separated from their positions after taking medical leave. Defendant's initial disclosure statement, however, disclosed Broderick's knowledge of employment practices based on medical leave. (Dkt. # 48, Ex. A.) Further, Defendant's First Supplemental Disclosure Statement specified that eight other employees were separated from their jobs for medical reasons. (Dkt. # 48, Ex. C.)

Evidence of the ninth employee, however, was not disclosed until the Third Supplemental Disclosure Statement, which was filed on February 26, 2010, more than a month after the discovery deadline. (Dkt. # 48, Ex. D.) Therefore, under Rule 37, facts about this ninth individual are not properly before the Court. Defendant incorrectly asserts that it was allowed to disclose the individual as a Rule 26(e) supplemental disclosure. That rule, however, requires supplementation when a party learns that its prior disclosures are in some way incomplete or inaccurate. *See* Fed. R. Civ. P. 26(e) advisory committee notes to the 1993 Amendments. Rule 26(e) does not give a party *carte blanche* authority to add new facts after discovery has closed.

The Court also strikes the section of Broderick's declaration that, prior to Plaintiff's application for reinstatement, a male employee had his reinstatement request denied. (Dkt. # 41, Ex. A). This fact was not disclosed prior to the declaration. Rather, Broderick testified in her deposition that she was not sure whether any other employees had sought

1 reinstatement.

While the Court strikes these portions of the record, it is unnecessary to strike the entire Motion for Summary Judgment, as this information does not substantially alter the Court's analysis of the Motion for Summary Judgment. The remaining topics of Plaintiff's Motion to Strike are not relevant to the Court's decision in the Motion for Summary Judgment, and are, therefore, denied as moot.

### B. Defendant's Motion to Strike

Defendant moves to strike a portion of Plaintiff's declaration, which refers to an employee, Bill Hawkins, who allegedly was not released even after taking extended medical leave. Plaintiff, however, never disclosed Bill Hawkins prior to filing her Response to the Motion for Summary Judgment, which was filed after the discovery deadline. This untimely addition of evidence may have prevented Defendant from developing rebuttal evidence, and the Court, therefore, strikes any references to Bill Hawkins.[2]

## II. Plaintiff's Title VII Claim

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the

---

[2] Even if the Court had not stricken this portion of the record, it appears that the evidence would still be inadmissible both for lack of foundation and for hearsay.

- 6 -

party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"Title VII . . . prohibits employers from failing or refusing to hire or discharging 'any individual . . . because of such individual's . . . sex." *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-2(a)(1)). "Title VII defines discrimination 'because of sex' as including discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Id.* (citing 42 U.S.C. § 2000e(k)).

The parties agree that Plaintiff must establish her case under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff establishes a prima facie case of discrimination by showing that "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated [individuals outside of her protected class] were treated more favorably." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). "If the plaintiff establishes a prima facie case, the burden of production--but not persuasion--then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (internal quotations omitted).

Plaintiff has failed to present a prima facie case. Specifically, the fourth element is lacking because Plaintiff presents no evidence that similarly situated individuals outside of her protected class were treated more favorably. *See Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff seems to be alleging three separate instances of discrimination (the initial separation from employment and two applications for reinstatement), but she does not present a prima facie case for any of these three instances. Plaintiff cannot show that similarly situated males or non-pregnant females were treated more

favorably than Plaintiff was treated either in termination or reinstatement.

Regarding the initial separation from her employment, Plaintiff admitted twice in her deposition that she was unaware of any other employees took extended medical leave and then were allowed to remain employed. Defendant, however, presents evidence that eight other employees, including several women, were separated from their positions for medical reasons.[3] According to Defendant, each of these employees was terminated after taking medical leave without pay, as was Plaintiff. Plaintiff's Response does not challenge these facts.

The statement of facts, but not the Response, cites sections of Plaintiff's deposition and declaration discussing two individuals who allegedly were treated differently from Plaintiff. As already discussed, Plaintiff's declaration mentions Bill Hawkins, who purportedly kept his job after taking medical leave. Plaintiff's deposition also discusses Melissa Rivas, an employee who had a baby and missed a deadline regarding her leave application. Plaintiff asserts that Defendant contacted Rivas to help her maintain her leave, whereas Plaintiff was separated from her job after not complying with Defendant's policy for filing documentation supporting the need for further leave. As for Bill Hawkins, Plaintiff cannot use this evidence because the Court has stricken it for failure to comply with Federal Rule of Civil Procedure 26(a). And regarding both Hawkins and Rivas, Plaintiff's assertions appear inadmissible by reason of hearsay and lack of foundation. Even if Plaintiff's assertions regarding Hawkins and Rivas were admissible, Plaintiff has presented no evidence from which the Court could conclude that either was a similarly situated employee. Plaintiff has not explained their qualifications, the importance of their positions, their reasons for taking leave, the extent of their medical leave, the evidence submitted indicating their medical clearance to work, or any other facts that would allow the Court to compare the three employees' situations. The evidence offered by Plaintiff, therefore, does not create a genuine

---

[3] Defendant's Motion discusses nine employees, but the Court has determined that one of the employees was not properly disclosed. *See supra* Section I-A.

- 8 -

issue of fact.[4]

Regarding the requests for reinstatement, Plaintiff presents no admissible evidence that any employee has been reinstated after separation in circumstances analogous to hers. Plaintiff admitted in her deposition that she was unaware of any employees who received better treatment than she did. Plaintiff's statement of facts asserts simply that "Plaintiff is aware of other employees who were treated differently." (Dkt. # 46.) Such a blanket statement, unsupported by specific facts or foundation fails to establish a material issue of fact.

Finally, Plaintiff's already insufficient evidence is further weakened by the same actor inference. "[W]here the same actor is responsible for both [positive and negative treatment] of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996). Specifically, the same actor inference applies to the treatment of women taking pregnancy-related leave. *See Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 386 (S.D. N.Y. 2009) (finding it "quite difficult to reconcile" the defendant's "willingness to hire plaintiff while she was on maternity leave in January 2006 and to provide her three months' paid maternity leave a year later with plaintiff's allegation that he discriminatorily fired her because she was pregnant or because of her gender in March 2007"); *Panetta v. Sheakley Group, Inc.*, —F. Supp. 2d—, 2010 WL 1494987 at *5 (S.D. Ohio Apr. 14, 2010) (granting employer summary judgment where the employer hired the plaintiff knowing that she was pregnant and subsequently granted her maternity leave, before ultimately firing the plaintiff eleven months later); *see also Ragsdale v. Holder*, 668 F. Supp. 2d 7, 22–23 (D.C. Cir. 2009) (applying the same actor inference to annual leave and holding that the fact that a supervisor first granted a plaintiff leave during one pay period gave rise to an inference that the employer did not act with discriminatory animus when the supervisor

---

[4] Because Plaintiff's prima facie case fails under the fourth element, the Court need not consider any other elements of a prima facie case.

- 9 -

1 subsequently denied plaintiff's similar request for leave in a later pay period). The inference
2 is based on the principle that an employer's initial "willingness to treat [an] employee
3 favorably" is "strong evidence that the employer is not biased against the protected class to
4 which the employee belongs." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1096, 1097 (9th
5 Cir. 2005). The Court must take the inference into account on summary judgment, and a
6 plaintiff can defeat the same-actor inference only with an "extraordinarily strong showing
7 of discrimination." *Id.* at 1097, 1098.

8 In this case, Broderick decided to separate Plaintiff from her position and to deny her
9 two requests for reinstatement during the first half of 2007. In August of 2005, however,
10 Broderick granted Plaintiff's request for a waiver from taking the defensive tactics class due
11 to her then-existing pregnancy. Likewise, in November 2006 and January 2007, Broderick
12 granted Plaintiff two extensions of her medical leave due to her pregnancy. Therefore, an
13 inference arises that Broderick's actions in 2007 were not motivated by discrimination based
14 on gender. As Plaintiff's Response offers no meaningful response to this inference, Plaintiff
15 has not made the "extraordinarily strong showing of discrimination" necessary to overcome
16 the same actor inference. *See Coghlan,* 413 F.3d at 1097.

## CONCLUSION

18 Plaintiff has not established a prima facie case for discrimination. Because Plaintiff's
19 prima facie case fails, the Court need not address the remaining steps of the *McDonnell*
20 *Douglas* test.

21 **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment
22 (Dkt. # 40) is **GRANTED**.

23 **IT IS FURTHER ORDERED** that although not clearly designated as motions,
24 Plaintiff's Motion to Strike (Dkt. # 45) is **GRANTED-IN-PART** and **DENIED-IN-PART**,
25 and Defendant's Motion to Strike (Dkt. # 47) is **GRANTED**.

26 / / /
27 / / /
28 / / /

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this matter.

DATED this 3rd day of June, 2010.

*G. Murray Snow*
G. Murray Snow
United States District Judge